

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 JUN -4  PM 12: 03

DEPUTY CLERK _____

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CRAIG STEVEN MacKENZIE )<br>2289 Candice Circle )<br>Rockwall, Texas    75032 )<br>  )<br>                    Plaintiff  )<br>  )<br>v.  )<br>  )<br>JULIAN CASTRO, SECRETARY )<br>U.S. Dept. of Housing & Urban Development )<br>451 7th Street, SW )<br>Washington, D.C.    20410 )<br>  )<br>SHAUN DONOVAN, DIRECTOR )<br>The Office of Management & Budget )<br>725 17th Street, NW )<br>Washington, D.C.    20503 )<br>(Former HUD Secretary, 2009 through 2014) )<br>  )<br>U.S. DEPT. OF HOUSING & URBAN DEVELOPMENT )<br>451 7th Street, SW )<br>Washington, D.C.    20410 )<br>  )<br>                    Defendants )<br> )| Civil Action No. 3-15CV0752-D |

# PLAINTIFF'S RESPONSE

## IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS

# **TABLE OF CONTENTS**

Table of Authorities................................................................................................ii, iii

This Court Has Subject Matter Jurisdiction..............................................................1

Sovereign Immunity Has Been Waived....................................................................1

Congress Did Not Grant the Defendants (Prosecutorial) Discretion.....................1-3

The February 4, 2010 Housing Discrimination Complaint....................................4-6

Affirmatively to Further the Policies of This Subchapter......................................6-8

Plaintiff's Standing as an Aggrieved Person........................................................8-10

This Court Has Authority to Grant the Relief Sought by Plaintiff............................10

Conclusion...............................................................................................................10

# TABLE OF AUTHORITIES

### Cases

*Heckler v. Chaney*, 470 U.S. 821, 829 (1985)........................................................................1

*Citizens to Preserve Overton Park, Inc v Volpe*, 401 US 402, 410 (1971)..........................2


### Statutes, Regulations, and Presidential Executive Orders

28 U.S.C. § 1331......................................................................................................................1

5 U.S.C. § 702..........................................................................................................................1

24 C.F.R. § 103.400(a)(1)........................................................................................................2

24 C.F.R. § 103.400(a)(2)........................................................................................................2

42 U.S.C. § 3610(g)(2)(A)....................................................................................................2, 3

42 U.S.C. §3610(g)(2)(B).....................................................................................................2, 3

42 U.S.C. §3610(g)(2)(C)........................................................................................................2

42 U.S.C. §3612(o)(1).............................................................................................................3

42 U.S.C. §3614(a)..................................................................................................................3

42 U.S.C. §3610(a)(1)(A)........................................................................................................3

42 U.S.C. §3610(a)(1)(B)(i).................................................................................................3, 8

42 U.S.C. §3610(a)(1)(B)(ii)................................................................................................3, 8

42 U.S.C. §3610(a)(1)(B)(iv)..................................................................................................3

42 U.S.C. §3610(a)(1)(B)(ii)(1,2.3.4).....................................................................................3

42 U.S.C. §3610(g)(3).............................................................................................................3

42 U.S.C. §§ 3601 – 3619...............................................................................................*Passim*

42 U.S.C. § 3608(e)(5)............................................................................................................5

42 U.S.C. § 3601.....................................................................................................................5

Presidential Executive Order 11063..................................................................................5

Presidential Executive Order 12892..................................................................................5

42 U.S.C. § 3610(g)(2).........................................................................................................6

42 U.S.C. § 3608(e)(5).........................................................................................................7

42 U.S.C. § 3602(i)..........................................................................................................7, 8

42 U.S.C. § 3602(J)..............................................................................................................8

42 U.S.C. § 3612(o)(2).......................................................................................................10

5 U.S.C. § 706...................................................................................................................10


Other Authorities

HUD FHEO Handbook 8040.1............................................................................................4

(Available at:

)

HUD Website: Fair Housing Laws and Presidential Executive Orders..........................5, 6

(Available at:
http://portal.hud.gov/hudportal/HUD?src=/program_offices/fair_housing_equal_opp/FHLaws)

HUD Guidance Memorandum: Reasonable Cause Under the Fair Housing Act, 6-15-99............................6

(Available at:

)

## This Court Has Subject Matter Jurisdiction

1. Contrary to Defendants' assertions, this Court has subject matter jurisdiction over Plaintiff's Claims (28 U.S.C. §1331): "Federal Question: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

## Sovereign Immunity Has Been Waived

2. In 1976, Congress amended the Administrative Procedure Act to expressly waive the sovereign immunity of the government, thereby allowing suits seeking judicial review of an agency's action to be brought directly against the government itself in Federal District Court (5 U.S.C. § 702): "Right of Review: A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States _seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party_.........." (emphasis added).

## Congress Did Not Grant Defendants (Prosecutorial) Discretion

3. Under the Fair Housing Act, Congress did not grant Defendants (prosecutorial) discretion, despite Defendants' broad conclusory statement that "HUD's enforcement decisions are committed to agency discretion by law and are thus non-reviewable." This presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers. (See *Heckler v. Chaney*, 470 U.S. 821, 829 (1985)). The Supreme Court has also found that an action is "committed to agency discretion" if the delegation to the agency is so broad that a court cannot find any standard or "law to apply" to the agency action. (See *Citizens to Preserve Overton Park, Inc v Volpe*, 401 US 402, 410 (1971) (finding that the

agency's action was not unreviewable under § 701(a)(2) because the exception precludes review only in rare cases where the statute provides "no law to apply")).

4. Defendants cite 24 CFR § 103.400(a)(1) which contains the following, "The Assistant Secretary's determination (i.e., dismissal of the complaint) shall be based solely upon the facts concerning the alleged discriminatory housing practice provided by complainant and respondent and otherwise disclosed during the investigation. In making this determination (i.e., dismissal of the complaint), the Assistant Secretary shall consider whether the facts concerning the alleged discriminatory housing practice are sufficient to warrant the initiation of a civil action in federal court." (emphasis added). The identical language appears at 24 CFR § 103.400(a)(2) for issuance of a charge. HUD has granted to itself discretion that far exceeds the unambiguous plain language of the mandatory enforcement actions Congress included in the Fair Housing Act, by adopting these regulations which conflict with 42 U.S.C. §3610(g)(2)(A), 42 U.S.C. §3610(g)(2)(B), and 42 U.S.C. §3610(g)(2)(C). Self-granted discretion notwithstanding, Defendants neither issued a charge nor did they dismiss the complaint. Such broad undefined discretionary provisions undermine Congress' intent, and are tantamount to law enforcement officers deciding not to prosecute a murder before the District Attorney even sees the evidence. Taken to the extreme, this type of agency discretion could completely nullify the Fair Housing Act in its entirety, with Defendants abdicating their responsibilities and duties mandated by the statute. Under the Administrative Procedures Act, this Court has jurisdiction and authority to resolve these conflicts between Agency regulations and the statute.

5. Defendants only have investigative and enforcement duties under the Fair Housing Act; Defendants are not the "prosecutor". Congress even denied prosecutorial discretion to the Attorney General of the United States: "If an election is made under subsection (a), the Secretary shall authorize, and not later than 30 days after the election is made the Attorney General shall commence and maintain, a civil action on behalf of the aggrieved person in a United States district court seeking relief under this subsection...." (42 U.S.C. §3612(o)(1)).

6. Defendant HUD's February 4, 2010 Notification Letter (Plaintiff's Complaint Exhibit A) states: "In order to ensure that the Department informs you properly of the law's requirements, this

Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction    3

notification letter contains language required by the law. *A similar letter is used to notify all parties* whenever a formal complaint has been filed with the Department under the Federal Fair Housing Law." (emphasis added) (Plaintiff's Complaint Exhibit A, page 1, para. 3), "We are governed by Federal Law, which *sets out what steps we must take* when a formal complaint is filed."(emphasis added) (Plaintiff's Complaint Exhibit A, page 1, para. 4), "If our investigation indicates that there is a reasonable cause to believe that an unlawful discriminatory housing practice has occurred, the Department *must issue a charge*. If the investigation indicates there is no reasonable cause to believe that discrimination has occurred, the complaint will be dismissed." (emphasis added) (Plaintiff's Complaint Exhibit A, page 2, para. 3). There is no indication of any "Agency discretion" in the February 4, 2010 Notification Letter, nor is there any indication that HUD can avoid taking the mandatory action(s) required by the Fair Housing Act.

7. Taken together, 42 U.S.C. §3610(a)(1)(A) (filing of the housing discrimination complaint), 42 U.S.C. §3610(a)(1)(B)(i) (serving the notice on the aggrieved person(s)), 42 U.S.C. §3610(a)(1)(B)(ii) (serving the notice on the respondent(s)), 42 U.S.C. §3610(a)(1)(B)(iv) (100-day investigation), ( 42 U.S.C. §3610(a)(1)(B)(ii)(1,2.3.4) (conciliation), 42 U.S.C. §3610(g)(2)(A,B) (issuance of a charge) OR 42 U.S.C. §3610(g)(3) (dismissal of complaint), Congress provided step-by-step compulsory guidelines for the agency to follow in exercising its enforcement powers. There is no statutory "Agency discretion" in making enforcement decisions.

8. The November 5, 2014 Voluntary Compliance Agreement contains the following statements: "In the course of conducting its Review of the Letter, HUD has determined that at least some of the findings are incorrect. The parties understand and acknowledge that the remaining findings and concerns are disputed by the City and are still under review by HUD, and that resolution of such remaining matters would be time-consuming for both parties. In order to expedite just resolution of the matter and to avoid further administrative procedures or litigation over the remaining matters, the parties have agreed to enter into this Agreement." (Plaintiff's Complaint Exhibit D, Page 3, Para. 4,5). Defendants, by entering into this Agreement, exercised discretion not granted to it by Congress in the Fair Housing Act.

**The February 4, 2010 Housing Discrimination Complaint**

9. Defendants contend that the Housing Discrimination Complaint "was filed under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Section 109 of the Housing and Community Development Act of 1974, 42 U.S.C. § 5309." Defendant HUD's February 4, 2010 Notification Letter (Plaintiff's Complaint Exhibit A, page 1, para. 1) states: "Your complaint, alleging one or more discriminatory housing practices, was officially filed on February 4, 2010 as a complaint under the Federal Fair Housing Law, 42 USC Sections 3601-3619." The Notification Letter also includes only the Fair Housing Act Case Number (06-10-0449-8) in the lower right hand corner of pages 2 and 3. In the closing paragraph, the notification letter includes the statement "Please refer to Case Number 06-10-0449-08 (i.e., the Fair Housing Act complaint) on any correspondence or contact with this office." Defendants then refer to the Sweeney Declaration (page 2, para. 4), but the Sweeney Declaration lists four statutes (Sweeney includes the Fair Housing Act in his list, contrary to Defendants). Defendants then describe the 11-22-13 Letter of Findings which concluded that the City of Dallas was not in compliance with the three statutes listed by Defendants, and the Sweeney Declaration supports Defendants' statement (page 2, para. 6). Thus, Defendants have admitted their agreement with Plaintiff's Complaint Allegation 6.

10. Defendants' FHEO Handbook 8040.1, page 8, sections 9a and 9b establish the procedure for processing multi-jurisdictional cases: "9. COMPLAINTS INVOLVING TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 AND TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968. a. General Rule. There are situations where it is more appropriate to open a case under Title VIII of the Civil Rights Act of 1968 than Title VI of the 1964 Act. The general rule is as follows: A complaint which contains an allegation(s) from an individual complainant whose rights are protected under Title VIII of the Civil Rights Act of 1968, and/or contains an allegations) for which individual remedy is available under Title VIII, should be handled under Title VIII. b. Application of Rule. In such situations as stated above the FHEO staff may be successful in efforts to assist a complainant to recover financial compensation or damages for violations of rights protected under Title VIII, either through Title VIII administrative (or judicial) enforcement processes. Title VI does not afford

the Department the opportunity to secure such remedies on the complainant's behalf. Such complaint may suggest the need for a Title VI compliance review, however, and that need should be noted by the ARA/FHEO."

11. The Respondent City of Dallas' January 9, 2014 Letter to Defendant HUD: a) complains about the February 4, 2010 Housing Discrimination Complaint related to Title VI, Section 504, and Section 109, claiming that the 180-day Statute of Limitations had lapsed before the Complaint was filed (See Exhibit AA, Page 50, Section XI, Paragraph B); b) complains about HUDs' delays during the investigation (See Exhibit AA, Page 49, Para. 3 & 4); c) complains about the "unreasonable delay" in HUD's issuance of the November 22, 2013 Letter of Findings of Non-Compliance (See Exhibit AA, Page 50, Section XI, Paragraph D) ; and, d) complains that, after more than three years, one of the case files (i.e., the Fair Housing Act complaint) remains open (See Exhibit AA, Page 50, Section XI, Paragraph D).

**Affirmatively to Further the policies of this subchapter**

12. Merriam-Webster defines "affirmatively" as "favoring or supporting a proposition or motion", and "further" as "to help forward; promote".

13. Defendants have an unequivocal mandate from Congress to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter." (42 U.S.C. §3608(e)(5).

14. Congress' intentions are clear and unambiguous: "Declaration of Policy: It is the policy of the United States to provide, within Constitutional limitations, for fair housing throughout the United States." (42 U.S.C. §3601).

15. Defendants' obligations to promote equal opportunity in housing are further amplified in at least two Presidential Executive Orders: 11063 signed by President John F. Kennedy on November 20, 1962; and 12892 signed by President William J. Clinton on January 17, 1994.

16. Defendants' website provides a brief synopsis of the four statutes at issue:

   a. "Fair Housing Act: Title VIII of the Civil Rights Act of 1968 (Fair Housing Act), as amended, _prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on race, color, national origin, religion, sex, familial status (including children under the age of 18 living with parents or legal custodians, pregnant women, and people securing custody of children under the age of 18), and disability._" (emphasis added)

   b. "Title VI of the Civil Rights Act of 1964: Title VI _prohibits discrimination on the basis of race, color, or national origin in programs and activities receiving federal financial assistance._" (emphasis added)

   c. Section 504 of the Rehabilitation Act of 1973: Section 504 _prohibits discrimination based on disability in any program or activity receiving federal financial assistance._ (emphasis added)

   d. "Section 109 of Title I of the Housing and Community Development Act of 1974: Section 109 _prohibits discrimination on the basis of race, color, national origin, sex or religion in programs and activities receiving financial assistance from HUD's Community Development and Block Grant Program._" (emphasis added)

Clearly, the Fair Housing Act protects the rights of the broadest range of people, and is the only Statute tailored by Congress specifically to prohibit "discriminatory housing practices"

17. In its November 22, 2013 Letter of Findings of Non-Compliance, Defendants announced the completion of their investigation of the February 4, 2010 Housing Discrimination Complaint and definitively accused the City of Dallas of multiple discriminatory housing practices and violations of Title VI, Section 504, and Section 109. In light of Congress' statutory mandate to "affirmatively further" and the Fair Housing Act's reduced threshold of "reasonable cause determination" (42 USC §3610(g)(2), it was obfuscation for Defendants to fail to issue a charge against the City of Dallas for violations of the Fair Housing Act. See June 15, 1999 HUD Guidance Memorandum; Reasonable Cause Under the Fair Housing Act, authored by Gail W. Laster, General Counsel, and Eva M. Plaza, Assistant Secretary for Fair Housing and Equal Opportunity.

18. Mr. Sweeney states in his Declaration (page 2, para. 7), in conclusory fashion, "A LOF is issued prior to a Charge under the FHA when a complaint is filed and investigated under the concurrent jurisdictions of Title VI, Section 504, and Section 109." This statement conflicts with Mr. Sweeney's Notification Letter of February 4, 2010 (Plaintiff's Complaint Exhibit A) in two ways. Firstly, Mr. Sweeney's notification letter proclaims "Your complaint.....was officially filed........as a complaint under the Federal Fair Housing Law, 42 U.S.C. Sections 3601-3619." (Page 1, Para. 1). Secondly, the issuance of a LOF prior to issuance of a "charge" is not included in his notification letter at all (Page 2, Para. 3), nor is "concurrent jurisdiction" mentioned. Finally, there is no provision in the Fair Housing Act, 42 U.S.C. §§3601-3619, holding that a Letter of Finding is a precursor to a "charge".

19. To conclude that Defendants have met their duty to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies of this subchapter" (42 U.S.C. §3608(e)(5), in the face of numerous failures to carry out mandatory enforcement actions required by the Statute, would be an absurd result.

**Plaintiff's Standing as an Aggrieved Person**

20. Defendant HUD's denial of Plaintiff's standing as an "Aggrieved Person" was an egregious prejudicial error that is not supported by the facts, regardless of when the determination was made. HUD's action is reviewable by this Court because the Fair Housing Act includes an objective standard defining "Aggrieved Person" (42 U.S.C. §3602(i).

21. Plaintiff and Curtis Lockey ("Lockey") first contacted HUD in early October, 2009 to complain about the City of Dallas's discriminatory housing practices related to Dallas's Section 108 Loan Guarantee program. After several email exchanges and telephone conversations, HUD issued its October 29, 2009 Citizen Complaint letter, which correctly characterized Plaintiff as a "co-developer for the LTV Tower Redevelopment project in Dallas" (See Exhibit BB, Page 1, Para. 1). After several exchanges with the City of Dallas and HUD, on January 25, 2010 Plaintiff and Lockey decided to discontinue any further action on the October 29, 2009 Citizen Complaint in

order to pursue a Fair Housing Act complaint through HUD's Office of Fair Housing and Equal Opportunity.

22. Three days later, on January 28, 2010, Plaintiff and Lockey both received an email from Garry Sweeney with an attachment, "LTV Tower Dev. Statement of Allegations 1" (See Exhibit CC). Plaintiff requests the Court take judicial notice of the merging of the 10-29-09 Section 108 Loan Guarantee program allegations into the Statement of Allegations prepared by Mr. Sweeney. Six days later, on February 3, 2010, the Housing Discrimination Complaint was finalized and submitted.

23. Early in February, Plaintiff was served with a copy of HUD's Notification letter of February 4, 2010 (Plaintiff's Exhibit A). Plaintiff read 42 U.S.C. §3610(a)(1)(B)(i) and 42 U.S.C. §3610(a)(1)(B)(ii) and understood that HUD's notification letter was only to be served on "Aggrieved Persons" and "Respondents"; Plaintiff concluded he was included in the action as an "Aggrieved Person" (since the City of Dallas was the Respondent).

24. In his declaration, Mr. Sweeney states "Mr. MacKenzie was the identified representative of 1600 Pacific (Building), LP, but was not a named complainant." Plaintiff never presented himself as a representative of 1600 Pacific (Building), LP to HUD or anyone else; Plaintiff always presented himself as a co-developer and co-owner of a to-be-formed entity called LTV Tower Redevelopment, LP as illustrated in HUD's letter to Dallas of October 29, 2009 (Exhibit BB). "Complainant" (42 U.S.C. §3602(j)) and "Aggrieved Person" (42 U.S.C. §3602(i)) are each defined separately by the Fair Housing Act; "Representative" is not defined in the statute. There is no requirement in the Fair Housing Act that "Aggrieved Person(s)" also be "Complainant(s)".

25. Three years and ten months after the February 4, 2010 Fair Housing Act complaint was filed, Plaintiff became concerned about his standing as an aggrieved person when he read the HUD November 22, 2013 Letter of Findings of Non-Compliance especially the demand "Provide relief for complainant consistent with the evidence" (Note the exclusion of any "Aggrieved Persons") (Plaintiff's Complaint Exhibit C, Page 28, Para. 3).

26. On January 8, 2014, Plaintiff engaged Ronald L. Holmes to represent him. On February 27, 2014, Mr. Holmes corresponded with HUD/Sweeney (See Exhibit DD) and explained "….at the heart of

the Complaint is the enclosed Section 108 Loan Application to the City of Dallas (See Exhibit EE), which was provided to HUD in the "Responses to HUD March 30, 2010 Letter", prepared by Craig MacKenzie and Curtis Lockey, dated April 19, 2010 (See Exhibit FF). As you will see, the Applicant is not 1600 Pacific Building, LP, but rather LTV Tower Redevelopment LP, a to-be-formed Texas Limited Partnership consisting of Mr. MacKenzie and Mr. Lockey as partners." On May 16, 2014, Mr. Holmes again corresponded with HUD/Sweeney (See Exhibit GG) ,explained the nexus between the "Citizen Complaint" filed with HUD by Plaintiff and Lockey prior to the February 4, 2010 Fair Housing Act Complaint, reiterated his position on the Section 108 Loan Application, and provided additional evidence regarding the TIF Grant Application that had been submitted to the City of Dallas for the LTV Tower Redevelopment: "You also asked about other financing. The TIF Application was also submitted in the name of Curtis Lockey and Craig MacKenzie as Co-Developers and as partners in a to-be-formed Texas limited partnership, which was not to be affiliated with any other entity (including 1600 Pacific Building LP)." (See Exhibit HH for a copy of the TIF Grant Application). On July 15, 2014, Mr. Holmes again corresponded with HUD/Sweeney (See Exhibit JJ) and stated, "In furtherance of my letter of May 16, 2014 to you, I enclose herewith the Application by Mr. MacKenzie and Mr. Lockey to the City of Dallas Housing Finance Corporation for (HERA) Bond Financing. I have highlighted in yellow all of the places within the Application that refer to the Applicant as "a to be formed single asset entity (Texas LP)", which will be comprised of Curtis Lockey and Craig S. MacKenzie as the Partners. Again, Mr. Lockey and Mr. MacKenzie refer to themselves as co-developers. With the materials I forwarded to you with my letter of May 16, 2014 you now have proof positive that Mr. Lockey and Mr. MacKenzie on behalf of "a to be formed Texas Limited Partnership" were, at all times, the Applicant to the City of Dallas for the Section 108 Loan, TIF Financing, and (HERA) Bond Financing." (See Exhibit KK for a copy of the HERA Bond Financing Application).

27. All of the allegations contained within the February 4, 2010 Fair Housing Act Complaint describe discriminatory housing acts perpetrated against Plaintiff (and Lockey) by the Respondent City of Dallas. All of the cited violations contained within the HUD November 22, 2013 Letter of Findings of Non-Compliance were perpetrated against Plaintiff (and Lockey) by the Respondent City of

Dallas. Clearly, Plaintiff suffered a direct injury as a result of Respondent City of Dallas's unlawful conduct; Plaintiff is an "Aggrieved Person" as defined by the Fair Housing Act..

28. Under the Fair Housing Act, "*Any aggrieved person* with respect to the issues to be determined in a civil action under this subsection *may intervene as of right in that civil action*." (emphasis added) (42 U.S.C. §3612(o)(2). Despite this statutory entitlement granted to "any" aggrieved person, Defendants continue to deny Plaintiff's standing.

**This Court has Authority to grant the Relief Sought by Plaintiff**

29. Defendants misunderstand, misconstrue and misrepresent Plaintiff's Prayer for Relief, referring to it as a "laundry list". This Court has broad statutory authority to grant the relief sought by Plaintiff (5 U.S.C. §706).

**Conclusion**

30. Plaintiff has exhausted its administrative remedies. Plaintiff has no other adequate remedy in a court. For all the foregoing reasons, Plaintiff prays this Court deny the motion to dismiss.

DATED: June 4, 2015

Respectfully submitted,

_____
Craig Steven MacKenzie
2289 Candice Circle
Rockwall, Texas    75032
Tel.: 214-347-1214

## CERTIFICATE OF SERVICE

On June 4, 2015, I submitted the foregoing document with the clerk of the court U.S. District Court, Northern District of Texas. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

_____
Craig Steven MacKenzie
2289 Candice Circle
Rockwall, Texas    75032
Tel.: 214-347-1214