IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CRAIG STEVEN MacKENZIE,           §
                                  §
                     Plaintiff,   §
                                  §   Civil Action No. 3:15-CV-0752-D
VS.                               §
                                  §
JULIAN CASTRO, SECRETARY,         §
U.S. HOUSING & URBAN              §
DEVELOPMENT, et al.,              §
                                  §
                    Defendants.   §

MEMORANDUM OPINION
AND ORDER

Defendants Julian Castro ("Secretary Castro"), Shaun Donovan ("Secretary Donovan"), and U.S. Department of Housing and Urban Development ("HUD") (collectively, "the HUD Defendants") move to dismiss the claims of *pro se* plaintiff Craig Steven MacKenzie ("MacKenzie") alleging violations of various federal statutes and implementing regulations and of his constitutional right to due process. Treating the HUD Defendants' motion as brought in part under Fed. R. Civ. P. 12(b)(1) and in part under Rule 12(b)(6), the court grants the motion to the extent of dismissing all of MacKenzie's claims against the HUD Defendants except his due process claim.

I

Because this case is the subject of a prior memorandum opinion and order, *see MacKenzie v. Castro*, 2016 WL 3906084 (N.D. Tex. July 19, 2016) (Fitzwater, J.) ("*MacKenzie I*"), the court will recount only the background facts and procedural history

necessary to understand the present decision.  In 2010 an entity named 1600 Pacific Building, LP ("1600 Pacific") filed a housing discrimination complaint ("HUD Complaint") alleging that the City of Dallas (the "City") had thwarted 1600 Pacific's efforts to redevelop an office building into a large affordable housing project.  1600 Pacific complained that the City had violated the following statutes: the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619; Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and § 109 of the Housing and Community Redevelopment Act of 1974 ("HCRA"), 42 U.S.C. § 5309.  MacKenzie alleges that he participated in, and contributed to, the preparation of the HUD Complaint. In investigating the HUD Complaint, HUD opened four case files—one for each of the four statutes that 1600 Pacific claimed the City had violated.  While the matter was pending before HUD, 1600 Pacific withdrew its FHA complaint and HUD closed the file.  After HUD completed its investigation, it issued a "Letter of Findings of Non-Compliance" ("Non-Compliance Letter"), concluding that the City was not in compliance with Title VI, the Rehabilitation Act, or HCRA.  Thereafter, HUD and the City engaged in conciliation and entered into a "Voluntary Compliance Agreement" ("VCA") that addressed the City's alleged violations of Title VI, the Rehabilitation Act, and HCRA.  MacKenzie did not participate in the conciliation and was not a signatory to the VCA.  As for the City's alleged violation of the FHA, the VCA stated that 1600 Pacific had withdrawn its complaint and that HUD had closed its case.

MacKenzie later filed this lawsuit against the HUD Defendants.  In his first amended

complaint,[1] MacKenzie alleged that the HUD Defendants had violated various non-discretionary provisions of the FHA when negotiating and entering into the VCA with the City, *see MacKenzie I*, 2016 WL 3906084, at *2 n.5, and that the HUD Defendants' conduct had deprived him of his constitutional right to due process. The HUD Defendants moved under Rule 12(b)(1) to dismiss MacKenzie's first amended complaint for lack of subject matter jurisdiction, and the court denied the motion. The court held that,

> [t]o the extent HUD challenges MacKenzie's ability to plead a plausible claim under the specific FHA provisions cited in the amended complaint, HUD has not properly moved to dismiss MacKenzie's claim brought under those provisions. HUD's motion to dismiss is filed only under Rule 12(b)(1) and seeks dismissal of the amended complaint for lack of subject matter jurisdiction. Although HUD correctly states that this court does not have jurisdiction under the [Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706,] to review claims based on agency actions committed by law to agency discretion, HUD does not contend that any of the specific FHA provisions on which MacKenzie relies. . . *are* discretionary. Absent a basis to challenge the court's subject matter jurisdiction under Rule 12(b)(1), HUD's arguments that focus on MacKenzie's inability to plausibly allege violations of any of the enumerated FHA

---

[1]In his complaint, MacKenzie alleged violations of 42 U.S.C. § 3608(e)(5) and of his constitutional due process rights. Secretary Castro and HUD moved to dismiss MacKenzie's complaint on the basis that his sole claim under § 3608(e)(5) was not reviewable under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. The court referred the motion to the magistrate judge, who recommended that MacKenzie's complaint be dismissed on the basis that he only alleged discretionary agency action and the APA's waiver of sovereign immunity did not apply to agency action committed to agency discretion by law. MacKenzie objected to the magistrate judge's recommendation and requested leave to amend his complaint. The court declined to adopt the magistrate judge's findings, conclusions, and recommendation and granted MacKenzie leave to amend, holding that "[b]ecause MacKenzie is proceeding *pro se*, he should be given one last, fair opportunity to plead his best case." Dec. 16, 2015 Order at 2.

> provisions should be raised by Rule 12(b)(6) or Rule 12(c) motion. Accordingly, without suggesting a view on the merits of MacKenzie's claims brought under the APA, the court denies HUD's motion to dismiss these claims under Rule 12(b)(1) for lack of subject matter jurisdiction.

*MacKenzie I*, 2016 WL 3906084, at *4.

With leave of court, MacKenzie has now filed a second amended complaint. He asserts claims against the HUD Defendants, and he adds as defendants former U.S. Attorney General Loretta Lynch ("General Lynch"), former U.S. Attorney General Eric H. Holder ("General Holder"), and the United States Department of Justice ("DOJ"). MacKenzie alleges that defendants have violated numerous non-discretionary provisions of the FHA, and implementing regulations; Title VI, and implementing regulations; § 504 of the Rehabilitation Act, and implementing regulations; and § 109 of HCRA. MacKenzie also complains of actions that have deprived him of his constitutional right to due process.

The HUD defendants move to dismiss under Rule 12(b)(6), contending that MacKenzie has failed to state a claim under § 704 of the APA on which relief can be granted because (1) he has another remedy available, (2) he has not identified any final agency action that would trigger review under the APA, and (3) he has failed to plausibly allege violations of the FHA. MacKenzie opposes the motion.

II

As a threshold matter, the court will address *sua sponte* the proper status of the defendants. As noted, MacKenzie originally filed this lawsuit against Secretary Castro, Secretary Donovan, and HUD. Although MacKenzie identifies Secretary Donovan in his

complaint and first and second amended complaints as Director of the Office of Management and Budget (a position Secretary Donovan held from 2014 to 2017), the court can take judicial notice that Secretary Donovan also served as the Secretary of HUD from 2009 to 2014. In MacKenzie's second amended complaint, he adds General Lynch, General Holder, and DOJ as parties. It does not appear from MacKenzie's complaint or either of his amended complaints that he intends to sue Secretary Castro, Secretary Donovan, General Lynch, or General Holder in his or her individual capacity. For example, there is no suggestion that MacKenzie is asserting a *Bivens*[2] action or any other type of claim for which they could be held liable in an individual capacity. This means that these four individual defendants are being sued in their official capacities, and the actions against them should be treated as actions against HUD (in the cases of Secretaries Castro and Donovan) or DOJ (in the cases of Generals Lynch and Holder). This is so because it is clearly established that a suit against a government official in his or her official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, for purposes of deciding the HUD Defendants' motion to dismiss, the court will treat MacKenzie's suit as brought only against HUD rather than against HUD and Secretaries Castro and Donovan.

---

[2]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Moreover, because the court is deeming MacKenzie's claims against Secretaries Castro and Donovan and Generals Lynch and Holder to be asserted against them in their official capacities, Rule 25(d) comes into play. This Rule provides:

> Public Officers; Death or Separation from Office. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

The court can take judicial notice that Secretaries Castro and Donovan have been succeeded by Ben Carson ("Secretary Carson"), and that Generals Lynch and Holder have been succeeded by Jeff Sessions ("General Sessions"). Accordingly, the proper individual defendants in this case are Secretary Carson and General Sessions, in their official capacities.[3] Hereafter, the court will change the case caption to reflect the correct parties-defendant.

III

For reasons the court will explain below, it is deciding part of the HUD Defendants' motion to dismiss under Rule 12(b)(1) and part under Rule 12(b)(6). The court will therefore set out the pertinent standards for both types of motions before turning to the merits.

---

[3]As of the date of this memorandum opinion and order, MacKenzie has not served General Lynch, General Holder, the DOJ, or General Sessions. The court is today filing an order directing MacKenzie to show good cause under Rules 4(m) and 6(b) for failing to effect service on these defendants.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id*. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id*. (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of the plaintiff's complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (brackets omitted). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim

and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594

F.3d 383, 387 (5th Cir. 2010). To survive the HUD Defendants' motion, MacKenzie's

second amended complaint must allege "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough

to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at

679 (brackets omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading

must contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual

allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause

of action will not do.'" *Id.* (quoting *Twombly*, 550 U. S. at 555).

## IV

The HUD Defendants move to dismiss MacKenzie's lawsuit on the basis that he has

failed to plead a "final agency action for which there is no other adequate remedy in a court,"

as required under 5 U.S.C. § 704.[4]

The APA provides for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other remedy in a court." 5 U.S.C. § 704.[5] The requirements of § 704 are jurisdictional. *See e.g., Belle Co. v. U.S. Army Corps of Eng'rs*, 761 F.3d 383, 388 (5th Cir. 2014) ("If there is no final agency action, a court lacks subject-matter jurisdiction." (citing *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999))), *vacated and remanded sub nom. Kent Recycling Servs., LLC v. U.S. Army Corps of*

---

[4]The HUD Defendants raise this argument as a basis to contend that MacKenzie has failed to state a claim for relief under the APA, not as a ground to argue that this lawsuit is barred by sovereign immunity. Nor does MacKenzie rely on § 704 as a basis to contend that his suit is *not* barred by sovereign immunity. In fact, neither side mentions sovereign immunity in the briefing related to the HUD Defendants' instant motion to dismiss. The court therefore deems it unnecessary to discuss the interrelationship between § 704 and the waiver of sovereign immunity found in the first sentence of 5 U.S.C. § 702. *Cf., e.g., Inclusive Cmtys. Project, Inc. v. U.S. Dep't of Treasury*, 2015 WL 4629635, at *4 (N.D. Tex. Aug. 4, 2015) (Fitzwater, J.) (noting that § 704 limits the right to bring suit under the waiver of sovereign immunity found in the *first* sentence of § 702, but does not limit the waiver of immunity in § 702's *second* sentence).

[5]MacKenzie does not contend that the agency actions outlined in his second amended complaint are reviewable by statute. Although he states in his response brief that a "Final Order (i.e. 'Final Agency Action') issued by a HUD Administrative Law Judge, and served on the parties by the (HUD) Secretary is subject to judicial review [under 42 U.S.C. § 3612(i)(1)]," he does not argue that HUD's actions in this case are reviewable under 42 U.S.C. § 3612(i)(1), or that any "Final Order" has been issued, or that any "Final Agency Action" has been taken in this case. P. Br. 6. Nor, apparently, could he. Section 3612(i)(1) provides for judicial review only of a "final order for relief" entered in an administrative hearing *after* HUD has elected to take enforcement action and levied a charge of discrimination, none of which is alleged to have occurred here. Moreover, § 3612(i)(2) provides that venue when judicial review is sought pursuant to § 3612(i)(1) "shall be in the judicial *circuit* in which the discriminatory housing practice is allowed to have occurred." *Id.* (emphasis added). Filing suit in a *district* court, as MacKenzie has done here, to obtain § 3612(i)(1) review would therefore be improper.

*Eng'rs*, ___ U.S. ____, 136 S.Ct. 2427 (2016). The reason the requirements are jurisdictional

is because § 704 effects a waiver of sovereign immunity. As the *Belle Co.* panel explained:

> The United States may not be sued except to the extent it has
> consented to such by statute. The APA provides such a waiver
> for claims seeking relief other than money damages. Where, as
> here, no relevant agency statute provides for judicial review, the
> APA authorizes judicial review only of final agency action for
> which there is no other adequate remedy in a court. If there is
> no final agency action, a court lacks subject-matter jurisdiction.

*Belle Co.*, 761 F.3d at 387-88 (citations and internal quotation marks omitted).

Challenges to a court's subject matter jurisdiction may be raised in a motion filed

under Rule 12(b)(1). Although the HUD Defendants move to dismiss only under Rule

12(b)(6), the court can construe their motion as if it were a facial challenge to the court's

jurisdiction, properly filed under Rule 12(b)(1). *See Palo ex rel. Estate of Palo v. Dall.

Cnty.*, 2005 WL 2090640, at * 1 (N.D. Tex. Aug. 29, 2005) (Fitzwater, J.) (explaining that

Eleventh Amendment immunity must be addressed through a Rule 12(b)(1) motion,

construing Rule 12(b)(6) motion as Rule 12(b)(1) motion, and dismissing claim without

prejudice).

V

A

The HUD Defendants contend that MacKenzie has not pleaded a "final agency action"

with respect to his claims against HUD "based on its allegedly faulty investigation of the

[City] under the [FHA]," Ds. Br. 13, because HUD did not finally determine any party's legal

rights, and the HUD investigation did not determine the rights of MacKenzie or anyone else

-10-

because nothing HUD did precluded them from seeking legal relief directly against the City under the FHA.

MacKenzie maintains that he is challenging HUD's "final agency action" (i.e., the VCA) and "non-final" actions (i.e., "prejudicial errors of law which tainted the VCA," P. Br. at 20), and that:

> [t]he [VCA], including closure of the FHA complaint investigation, clearly represents the "Consummation" of the agency's decisionmaking process (it is not tentative or interlocutory in nature). Additionally, a breach of the [VCA] could result in civil actions in US District Court to enforce the terms and conditions of the Agreement. Therefore, the rights and obligations have been determined (including the VCA's acknowledgment of HUD's acceptance of the "withdrawal" of the FHA complaint and HUD's closure of the FHA Investigation), from which legal consequences will flow.

*Id.* (citations omitted).

B

To the extent that MacKenzie challenges HUD's closure of the FHA complaint investigation, he has not pleaded "final agency action," as is required under § 704.

The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will

-11-

flow."

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).  "In evaluating whether a challenged agency action meets these two conditions, this court is guided by the Supreme Court's interpretation of the APA's finality requirement as 'flexible' and 'pragmatic.'" *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

In *Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002) (per curiam), the Fifth Circuit held that the dismissal of an administrative complaint does not constitute "final agency action" under § 704 because such a dismissal does not determine the party's rights or have legal consequences.  Instead, the dismissal of an administrative complaint

> simply end[s] the agency's investigation of [the complainant's] charge, and notifie[s] [the complainant] of her right to pursue her claim in court.  Any final determination would occur in court.  Therefore, there is no final agency action . . . and no review available under the APA.

*Id.*; *see also Ward v. EEOC*, 719 F.2d 311, 313-14 (9th Cir. 1983) (affirming dismissal of suit against EEOC on basis that court lacked subject matter jurisdiction under APA because, *inter alia*, "EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit by either the EEOC or the charging party in federal district court; only the district court may fix liability."); *Stewart v. EEOC*, 611 F.2d 679, 683-84 (7th Cir. 1979) (affirming determination that EEOC's failure to make reasonable cause determination within 120 days of original

charge was not "final disposition" or "final agency action" and was therefore not reviewable

under APA); *McCall v. Yang*, 179 F.Supp.3d 92, 96 (D.D.C. 2016) ("[T]he agency's

processing of Plaintiff's administrative complaint neither determines Plaintiff's 'rights or

obligations' nor 'results in "legal consequences."'  The aspects of the EEOC's process that

Plaintiff purports to challenge had no such effects because Plaintiff maintained the right to

bring an action in Federal district court regardless of the EEOC's actions—or lack thereof.

None of the EEOC's actions removed Plaintiff's private right of action.  Nor could those

actions have affected the outcome of any such civil action that Plaintiff could have brought

in district court (but chose not to file)."); *EEOC v. Bass Pro Outdoor World, LLC*, 2013 WL

5515345, at *3 (S.D. Tex. Oct. 2, 2013) (noting, in *dicta*, that "if Defendants—or one of the

individuals allegedly discriminated against—had filed a lawsuit against the EEOC alleging

improper conciliation . . . [t]hat suit would likely be barred by provisions of the APA.").

Here, as in *Newsome*,[6] HUD's closure of the FHA complaint did not determine the

rights of 1600 Pacific (the complainant) or of any other aggrieved party, and no legal

consequences will flow from HUD's action.  Assuming that MacKenzie is an "aggrieved

---

[6]MacKenzie contends in his response that HUD's enforcement powers under the FHA are so "substantially different" from the EEOC's enforcement powers (which he maintains are severely restricted by statute) that "the citation of EEOC caselaw . . . should be discarded." P. Br. 14-15. The court disagrees.  What is relevant, for purposes of the court's decision today, is that when the EEOC dismisses an administrative complaint, the complainant's rights are unaffected, and the complainant can pursue a private action under federal law to obtain redress for any alleged discrimination.  A complainant whose FHA claim is dismissed administratively can similarly pursue a private right of action under 42 U.S.C. § 3613(a)(1)(A).

person," as defined in the FHA (he alleges that he is), 42 U.S.C. § 3613(a)(1)(A) gives him the right to sue the City in federal court to obtain "appropriate relief" with respect to, *inter alia*, the City's "alleged discriminatory housing practice."  MacKenzie has not alleged that HUD took any action that would interfere with his right to bring a private action under § 3613(a)(1)(A), and, accordingly the court concludes that HUD's closure of 1600 Pacific's FHA complaint is not "final agency action" as is required under § 704.[7]

## C

Even assuming *arguendo* that HUD's closure of 1600 Pacific's FHA complaint investigation constitutes a "final agency action," MacKenzie's claims based on this action are still barred if he has an "other adequate remedy in a court."  5 U.S.C. § 704.

## 1

The HUD Defendants contend that MacKenzie does have an adequate remedy in the form of a private right of action under 42 U.S.C. § 3613.  They maintain that the relief MacKenzie requests "would essentially require HUD to re-do its investigation of the [City]'s alleged discrimination.  But MacKenzie can simply sue the [C]ity directly if he believes it engaged in unlawful discrimination.  Therefore, no claim lies against HUD under the APA."

---

[7]MacKenzie alleges in his second amended complaint that, under the FHA, HUD was not authorized to accept the withdrawal of a complaint.  Even assuming *arguendo* that MacKenzie is correct that the FHA does not authorize HUD to accept the withdrawal of a complaint, the court would still conclude that it is without jurisdiction to review such agency action because the acceptance of the withdrawal of a complaint is not an agency action by which "rights or obligations have been determined," or from which "legal consequences will flow."  *Bennett*, 520 U.S. at 178.

Ds. Br. 9 (citations omitted).

In response, MacKenzie disputes the HUD Defendants' characterization of his claims as alleging that HUD "mishandled the investigation," contending that "[w]hile there may be some candor in [the HUD Defendants'] overly simplistic statements, the gravamen of MacKenzie's claims are founded on Defendants' prejudicial, unlawful conduct and violations of Federal Law," P. Br. 12, including HUD's failure to issue a "no reasonable cause" determination and dismiss the complaint, as required under 42 U.S.C. § 3610(g)(3). MacKenzie also posits that suing the City will not offer him any redress or relief from the HUD Defendants' unlawful conduct or violations federal law because "suing the [City] is no remedy at all, let alone 'adequate remedy[,'] for MacKenzie's agency action and final agency action claims against HUD and DOJ." P. Br. 8 (capitalization and underlining omitted).

In reply, the HUD Defendants challenge MacKenzie's contention that a suit against the City is "no remedy at all" because it would not provide MacKenzie a claim *against HUD*. They maintain that a housing complainant only has a claim against the alleged discriminator (not against HUD), and that "HUD is not alleged to have discriminated against any housing development MacKenzie was associated with, nor did anything HUD did in its investigation have any detrimental effect on MacKenzie's legal rights, so as to give rise to a cause of action under the APA." Ds. Reply 4.

2

Under the FHA, MacKenzie can bring suit directly against the City, which is the entity he alleges has engaged in discriminatory housing practices. *See* 42 U.S.C. § 3613(a)(1)(A)

("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice[.]").[8]  Because MacKenzie can file suit against the City, he has an adequate remedy and cannot seek judicial review of HUD's closure of its investigation of 1600 Pacific's FHA complaint.  *See Marinoff v. U.S. Dep't of Hous. & Urban Dev.*, 892 F.Supp. 493, 497 (S.D.N.Y. 1995) ("Because § 3613(a)(2) allows a complainant to proceed in federal court against the perpetrator of the discriminatory practice(s) even if HUD determines that no 'reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur,' 42 U.S.C. § 3610(g), I find that plaintiff has a reasonable alternative and therefore review under APA is not available."), *aff'd*, 78 F.3d 64 (2d Cir. 1996); *see also, e.g., Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 n.3 (2d Cir. 1987) ("We also note that the APA further restricts judicial review to those agency actions for which 'there is no other adequate remedy in court.'  5 U.S.C. § 704.  Here, Marlow clearly has an adequate remedy in court: he may seek relief under section 504 of the Rehabilitation Act directly against the Board."); *Ward*, 719 F.2d at 314 ("[T]he statutory requirement that there be 'no other adequate remedy in a court' is not met.  Ward could and did remedy the EEOC's failure to prosecute his discrimination charge diligently by directly suing his

---

[8]Although under 42 U.S.C. § 3613(a)(2) an aggrieved person cannot file a lawsuit "if the Secretary [of HUD] or a State or local agency has obtained a conciliation agreement with the consent of an aggrieved person"— "except for the purpose of enforcing the terms of such an agreement"—MacKenzie has not consented to the VCA.

employer in federal district court."); *Wije v. Tex. Woman's Univ.*, 2015 WL 9872534, at *10 (E.D. Tex. Dec. 22, 2015) ("an APA suit against the Department of Education is impermissible because Plaintiff has an adequate remedy—Plaintiff may bring suit directly against TWU, the entity he claims discriminated against him).

In his response, MacKenzie contends that a suit against the City "will not offer [him] any redress or relief from Defendants' unlawful conduct or violations of Federal Law." P. Br. 7. But with respect to HUD's closure of 1600 Pacific's FHA complaint, MacKenzie objects only to HUD's alleged failure to follow the proper procedure.[9] *See* 2d Am. Compl. ¶ 24 (alleging that defendants exceeded their statutory and regulatory authority by accepting 1600 Pacific's withdrawal of its FHA complaint); *id.* ¶ 25 (alleging that defendants violated various regulations by closing the investigation of 1600 Pacific's FHA complaint before issuing a determination and before executing and approving a conciliation agreement). Courts have held that where the complainant is entitled to *de novo* review in district court *on the merits* of his underlying claim (regardless of the outcome of an agency's investigation of that claim), the complainant has an "other adequate remedy in a court" and cannot challenge the agency's *procedural* errors through a suit brought pursuant to the APA. *See, e.g., Nielsen v. Hagel*, 666 Fed. Appx. 225, 2016 WL 6695786, at *5 (4th Cir. Nov. 15,

_____

[9]Although MacKenzie alleges in his second amended complaint that defendants "interfered with the [HUD Complaint] investigation by demanding/coercing the Complainant to withdraw the February 4, 2010 complaint," 2d Am. Compl. ¶ 23, this conclusory allegation is insufficient to state a plausible claim that a defendant violated 42 U.S.C. § 3617 or any of the cited regulations.

2016) (noting that agency's procedural errors would not affect question whether plaintiff's substantive complaint had merit, and that cause of action provided by Title VII therefore afforded plaintiff an "adequate remedy" of judicial review for his claims of employment discrimination, thereby precluding judicial review under § 704 of agency's action); *Wright v. Dominguez*, 2004 WL 1636961, at *1 (D.C. Cir. July 21, 2004) (per curiam) ("Federal employees such as appellant are not bound by the outcome of the EEOC's administrative process but are entitled to de novo review in district court regardless of that outcome. This de novo review provides an adequate remedy in a court within the meaning of 5 U.S.C. § 704 for complaints about the EEOC's administrative process, precluding an APA challenge to the EEOC's procedures." (citation omitted)); *McCall*, 179 F.Supp.3d at 96 ("an adequate remedy in court exists with respect to *procedural* challenges against the EEOC [when] a complainant may pursue a *substantive* discrimination claim in Federal district court.").

Accordingly, the court concludes that, to the extent that MacKenzie challenges HUD's closure of 1600 Pacific's FHA complaint, the court lacks jurisdiction under § 704 to adjudicate this claim.[10]

---

[10]MacKenzie argues in his response brief that the HUD Defendants have oversimplified the FHA's "private right of action"; that under the FHA aggrieved persons cannot simultaneously file an administrative complaint with HUD and commence a civil action in A district court; and that

> if HUD had followed Congress' FHA commands (after "conciliation efforts failed"), determined that a discriminatory housing practice had occurred and issued a charge on behalf of the aggrieved persons, the Attorney General of the United States would have commenced an action in US District Court, thereby

VI

The court considers next whether MacKenzie has plausibly pleaded a final agency action by challenging HUD's failure to issue a determination that "reasonable cause exists to believe that a discriminatory housing practice has occurred [. . . ] (and to) immediately issue a charge on behalf of the aggrieved person."   P. Br. 10 (quoting 42 U.S.C. § 3610(g)(2)(A)).

A

As stated above, the FHA defines "agency action" to include an agency's "failure to act." 5 U.S.C. § 551(13).  Courts have generally concluded that when an agency fails to take a discrete action that it is required to take, the agency's failure to act can constitute "final agency action" subject to judicial review.  *See, e.g., Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("[W]here an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review. Were it otherwise, agencies could effectively prevent judicial review of their policy

—————————

> eliminating the need for private litigation.  Importantly, there are no provisions in the [FHA], Title VI, [the Rehabilitation Act], or [the HCRA], or in any of the implementing regulations, which grant HUD any authority or discretion to cease its investigative and enforcement duties, simply because of the existence of the "private right of action."

P. Br. 8.  The court disagrees.  Even if the court assumes, as MacKenzie urges, that an aggrieved person cannot *concurrently* pursue an administrative complaint and a civil action in the district court, the availability of a private right of action under 42 U.S.C. § 3613 nonetheless provides an "other adequate remedy in a court" for purposes of 5 U.S.C. § 704.

determinations by simply refusing to take final action." (internal citations omitted)); *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) ("Even as to those actions not covered by the APA, it is apparent that, if an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review."). Claims based on an agency's failure to act are evaluated under 5 U.S.C. § 706(1), which authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Supreme Court held that a claim under § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64.

## B

In his second amended complaint, MacKenzie alleges that, "despite HUD's findings of 'discriminatory housing practices'" in the Non-Compliance Letter, and "contrary to the unambiguous plain language of the [FHA]," HUD "failed to issue any charge, or dismissal, based on alleged violations of the [FHA]." 2d Am. Compl. ¶ 6 (citing 42 U.S.C. § 3610(g)(2)(a) & (g)(3)). 42 U.S.C. § 3610(g)(1) provides, in pertinent part:

> The Secretary shall, within 100 days after the filing of the complaint . . . determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, unless it is impracticable to do so, or unless the Secretary has approved a conciliation agreement with respect to the complaint. If the Secretary is unable to make the determination within 100 days after the filing of the complaint . . . , the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so.

Section 3610(g)(2)(A) states, in pertinent part: "If the Secretary determines that reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, the Secretary shall . . . immediately issue a charge on behalf of the aggrieved person, for further proceedings under section 3612 of this title."

MacKenzie is correct that had HUD determined, with respect to 1600 Pacific's *FHA complaint*, that reasonable cause existed to believe that a discriminatory housing practice had occurred, HUD would have been required under 42 U.S.C. § 3610(g)(2)(A) to immediately issue a charge on behalf of 1600 Pacific.  But as MacKenzie recognizes, HUD made no such determination.  In fact, in his response brief, he complains of HUD's failure to make a reasonable cause determination under the FHA.  *See* P. Br. 9 ("In light of [the Non-Compliance Letter], which charged [the City] with numerous definitive, concrete violations of Title VI, [the Rehabilitation Act], and [HCRA] . . . all concerning [the City's] discriminatory housing practices, and given the [FHA]'s much lower threshold of 'reasonable cause determination[,'] it was obfuscation and unlawful for HUD *to fail to issue* a [reasonable cause determination]." (emphasis added)).  But while the Non-Compliance Letter clearly found that the City had engaged in discriminatory housing practices for purposes of 1600 Pacific's *other statutory claims*, it made *no* finding of discrimination with respect to 1600 Pacific's *FHA claim*.[11]  Moreover, HUD ultimately had no need to make such a

---

[11]In his response brief, MacKenzie quotes a May 24, 1996 HUD guidance memorandum entitled "Multi-jurisdiction Complaints," and argues that "neither the statutes nor the implementing regulations, grant to HUD any authority or discretion to 'pick and choose' which of the statutes it will investigate and enforce (and which it chooses to

determination because 1600 Pacific withdrew its FHA complaint and HUD closed the file.[12]

MacKenzie has not pleaded a plausible claim that HUD's failure to issue a reasonable cause

determination with respect to 1600 Pacific's FHA complaint before closing1600 Pacific's

FHA case file constitutes a failure to take a discrete agency action that HUD was required

to take.

## C

Even assuming *arguendo* that HUD's failure to issue a reasonable cause determination

with respect to 1600 Pacific's FHA complaint constituted a "final agency action" under §

704, the court concludes, for the reasons explained above, *see supra* § V(C)(2), that the FHA

provides MacKenzie with an "other adequate remedy in a court." 5 U.S.C. § 704.

As an allegedly "aggrieved person," MacKenzie has the right to sue the City directly

in federal district court to obtain "appropriate relief" with respect to the City's alleged

---

ignore)." P. Br. 18. But MacKenzie cites to no authority that would prohibit HUD from resolving the Title VI, Rehabilitation Act, and HCRA claims in the VCA and closing the FHA claim file based on 1600 Pacific's withdrawal of its FHA complaint.

[12]It is conceivable that the Secretary's failure to either make a reasonable cause determination within the timeframe required under § 3610(g)(1) or notify the complainant and respondent in writing of the reasons for not doing so might also be reviewable under § 706(1). Although it appears from the record that the Secretary did not make a reasonable cause determination within the § 3610(g)(1) timeframe—he did not make a reasonable cause determination at all with respect to 1600 Pacific's FHA complaint—MacKenzie does not allege that the Secretary failed to notify 1600 Pacific in writing of its reasons for not doing so. He alleges only that HUD failed to complete its investigation and "fail[ed] to notify the parties *of the results of the investigation*, within six months of the [HUD Complaint]." 2d Am. Compl. ¶ 17.

discriminatory housing practices.[13] 42 U.S.C. § 3613(a)(1)(A).  Accordingly, because he has an "other adequate remedy in a court," MacKenzie is not entitled to judicial review under the APA of HUD's failure to issue a reasonable cause determination with respect to 1600 Pacific's FHA complaint.

## VII

The court considers next whether HUD's entering into the VCA with the City constitutes "final agency action for which there is no other remedy in a court."  5 U.S.C. § 704.

## A

MacKenzie asserts in his response brief that the VCA is neither tentative nor interlocutory and that the terms of the VCA are enforceable in the district court.  The HUD Defendants neither dispute MacKenzie's characterization of the VCA nor contend that the VCA does not represent "final agency action."  Moreover, the VCA, itself, provides that HUD may seek injunctive relief to compel compliance in the event of an uncured material breach.  The court concludes that HUD's execution of the VCA constitutes "final agency action" under § 704.

## B

The court also concludes that MacKenzie does not have an other remedy in a court for HUD's entering into the VCA allegedly in violation of the FHA.  As explained above,

---

[13]The court assumes *arguendo* that a claim brought under 42 U.S.C. § 3613(a)(1)(A) against the City would be timely.

42 U.S.C. § 3613(a)(1)(A) provides an "aggrieved person" with a private right of action "to obtain appropriate relief *with respect to* [*a*] *discriminatory housing practice or breach* [*of a conciliation agreement*]."  The specific agency actions that MacKenzie challenges in the second amended complaint with respect to HUD's entering into the VCA do not fall into either of these categories (i.e., a discriminatory housing practice or a breach of a conciliation agreement).  MacKenzie alleges that HUD violated the FHA, first, by entering into the VCA but excluding "aggrieved persons," including MacKenzie, 2d Am. Compl. ¶¶ 10, 13, 14 (alleging violation of 42 U.S.C. § 3602(l)); second, by engaging in conciliation with the City after November 22, 2013, *id.* ¶ 12 (alleging violation of 42 U.S.C. § 3610(b)(1)); third, by entering into the VCA even though the HUD Secretary was not the complainant, *id.* (alleging violation of 42 U.S.C. §§ 3602(j), 3610(a)(1)(A)(i), and 3610(b)(2)); and, fourth, by failing to obtain MacKenzie's consent to the VCA, *id.* at ¶ 14 (alleging violation of 42 U.S.C. § 3612(e)).  Filing a private lawsuit against *the City* for the underlying violations of the FHA would not provide MacKenzie with a remedy for HUD's allegedly entering into the VCA in violation of MacKenzie's rights as an "aggrieved person" under the FHA.

Accordingly, the court concludes that, to the extent MacKenzie seeks judicial review in this court of HUD's actions in entering into the VCA, he has plausibly pleaded "final agency action for which there is no other remedy in a court," as required by 5 U.S.C. § 704.[14]

---

[14]This holding is not inconsistent with the court's conclusions that MacKenzie *does* have an "other adequate remedy" to address HUD's closure of 1600 Pacific's FHA complaint and failure to issue a reasonable cause determination.  *See supra* §§ V(C) & VI(C).  To the extent that MacKenzie complains about HUD's closing 1600 Pacific's FHA complaint rather

VIII

To the extent MacKenzie alleges in the second amended complaint that HUD violated other various regulations and provisions of the FHA, he does not contend in response to HUD's motion to dismiss that any of these other alleged violations constituted "final agency action for which there is no other adequate remedy in a court," as required under 5 U.S.C. § 704 to plead a plausible claim.  Accordingly, to the extent MacKenzie seeks judicial review under the APA of HUD's other alleged violations of the FHA and regulations, treating HUD's motion as one properly brought under Rule 12(b)(1), the court grants HUD's motion.

IX

Although the court concludes that it has subject matter jurisdiction to review HUD's entering into the VCA, and therefore declines to dismiss this claim based on Rule 12(b)(1), it must also decide under the Rule 12(b)(6) standard whether MacKenzie has failed to state a claim on which relief can be granted.

A

The HUD Defendants move to dismiss MacKenzie's suit on the basis that the actions he challenges are not governed by the FHA.  They maintain that, although MacKenzie

_____

than issuing a reasonable cause determination and bringing a discrimination suit against the City, MacKenzie's ability to bring his own discrimination suit against the City under 42 U.S.C. § 3613(a)(1)(A) provides him an other adequate remedy.  To the extent, however, that MacKenzie complains about HUD's alleged violation of certain FHA provisions during the conciliation process and when entering into the VCA, a § 3613(a)(1)(A) discrimination suit *against the City* does not provide an adequate remedy for the injury HUD allegedly caused when it entered into the VCA, allegedly in violation of MacKenzie's rights as an "aggrieved person" under the FHA.

recognizes in his second amended complaint that HUD's investigation of the City actually consisted of four separate administrative matters (one for each of the four statutes that 1600 Pacific claimed the City had violated), and that the FHA component of HUD's investigation was closed in September 2014 when 1600 Pacific withdrew its complaint, MacKenzie advances a series of allegations based on a faulty premise that the FHA's procedures governed all of HUD's administrative matters under Title VI, the Rehabilitation Act, and HCRA.  HUD contends that, because MacKenzie has failed to plausibly plead that investigations under these three separate statutes are governed by the FHA, MacKenzie's allegations fail to state any claim for relief.  The following passage from their brief illustrates their position and reasoning:

> For example, MacKenzie alleges that HUD failed to comply with the [FHA]'s "conciliation" procedures and improperly entered into a [FHA] "conciliation agreement" with the [City] without the involvement of the complainant (1600 Pacific) or MacKenzie.  But the agreement MacKenzie cites (and that is attached to his original complaint) does not purport to be a [FHA] "conciliation agreement."  Instead, it is a "voluntary compliance agreement" between the [C]ity and HUD under Title VI, [the Rehabilitation Act], and [HCRA].  MacKenzie has never pleaded any facts showing that HUD ever purported to enter into any [FHA] "conciliation agreement" with the [City]. Nor has MacKenzie pleaded any facts showing that it was improper for HUD to negotiate and enter into a voluntary compliance agreement with the [C]ity under Title VI, [the Rehabilitation Act], and [HCRA].

Ds. Br. 15-16 (citations and footnote omitted).

MacKenzie does not specifically respond to the HUD Defendants' argument that HUD's conduct with respect to the VCA is governed only by Title VI, the Rehabilitation Act,

and HCRA—not by the FHA.

B

Under the APA, federal courts may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  MacKenzie contends in his response brief that he "does not claim HUD's actions were arbitrary and capricious," but, instead, that the "gravamen" of the second amended complaint is HUD's "numerous violations of Federal Law" for which MacKenzie "seeks judicial review and relief under the APA."  P. Br. 23.  MacKenzie has failed to plausibly allege, however, that in entering into the VCA, HUD violated the relevant federal law—Title VI, the Rehabilitation Act, or HCRA.

MacKenzie does not allege that HUD's conduct with respect to the VCA violated any provision of Title VI, the Rehabilitation Act or HCRA.  He only asserts violations of the FHA.[15]  But the FHA did not govern HUD's conduct with respect to the VCA, which, by its terms, only resolved 1600 Pacific's complaints based on alleged violations of Tile VI, the Rehabilitation Act, and HCRA.  *See* Compl. Ex. D at 48 (listing case numbers for 1600

---

[15]MacKenzie alleges that HUD violated the FHA by, first, entering into the VCA after issuing the Non-Compliance Letter, in violation of 42 U.S.C. § 3610(b)(1); second, entering into the VCA without the Secretary of HUD as the complainant, in violation of 42 U.S.C. §§ 3602(j), 3610(a)(1)(A)(i), and 3610(b)(2); third, extending its administrative authority beyond the limits established in the FHA (i.e., "approving" the VCA), in violation of 42 U.S.C. § 3610(b)(2); and, fourth, failing to obtain MacKenzie's consent to the VCA, in violation of 42 U.S.C. §§ 3602(l), 3612(c), 3612(o), 3610(h), 3612(a), and 3612(e).

Pacific's Title VI, Rehabilitation Act, and HCRA cases only), *id.* at 50 ("With respect to the [FHA] complaint of [1600 Pacific] . . . on September 29, 2014, [1600 Pacific] withdrew its complaint and HUD has closed its case."). In other words, because 1600 Pacific withdrew its FHA complaint and HUD closed that case before entering into the VCA, and because the VCA addresses and resolves only 1600 Pacific's complaints under Title VI, the Rehabilitation Act, and HCRA, HUD, when entering into the VCA, was not obligated to comply with the FHA. The FHA provisions on which MacKenzie relies only govern the resolution of FHA complaints, which the VCA does not purport to do.

Accordingly, MacKenzie has not plausibly alleged a violation of federal law by pleading that HUD failed to comply with the FHA when it entered into the VCA. The court therefore grants the HUD Defendants' motion to dismiss MacKenzie's second amended complaint to the extent he alleges that HUD violated the FHA when entering into the VCA.

X

In granting the HUD Defendants' motion to dismiss, the court notes that it is not dismissing MacKenzie's due process claim. MacKenzie makes several references in his second amended complaint to alleged violations of his constitutional right to due process. *See* 2d Am. Compl. ¶¶ 1, 7, 8, and 9. In his prayer for relief, he asks the court, *inter alia*, to "hold unlawful and set aside Defendants' action[s] . . . found to be . . .[c]ontrary to constitutional right" and "[w]ithout observance of procedure required by law[.]" The HUD Defendants do not refer to MacKenzie's due process claim in their motion to dismiss. Accordingly, this claim remains for adjudication.

\*     \*     \*

Accordingly, for the reasons explained, the court grants the HUD Defendants' motion to dismiss and dismisses all of MacKenzie's claims against the HUD Defendants except his claim that they violated his constitutional right to due process.

**SO ORDERED**.

March 16, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE