IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRAIG STEVEN MacKENZIE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-0752-D |
| VS. | § | |
| | § | |
| BEN CARSON, SECRETARY, | § | |
| U.S. HOUSING & URBAN | § | |
| DEVELOPMENT, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Following the dismissal of *pro se* plaintiff Craig Steven MacKenzie's ("MacKenzie's") claims alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619; Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and § 109 of the Housing and Community Redevelopment Act of 1974 ("HCRA"), 42 U.S.C. § 5309, defendants U.S. Department of Housing and Urban Development ("HUD") and HUD Secretary Ben Carson ("Secretary Carson") (collectively, "the HUD Defendants") move under Fed. R. Civ. P. 12(c) for judgment on the pleadings on MacKenzie's remaining due process claim asserted against them, and defendants U.S. Department of Justice ("DOJ") and Attorney General Jeff Sessions ("General Sessions") (collectively, "the DOJ Defendants") move under Rules 12(b)(1) and (6) to dismiss all the claims asserted against them. MacKenzie opposes both motions, requests leave to file a third amended complaint, and

moves to transfer this case to the District of South Carolina. For the following reasons, the court grants the HUD Defendants' Rule 12(c) motion, grants the DOJ Defendants' Rule 12(b)(1) motion, and denies MacKenzie's motion to transfer and motion for leave to file an amended complaint. In light of these rulings, the court denies as moot MacKenzie's objections to the magistrate judge's May 19, 2017 order and his motion to strike the HUD Defendants' response to his objections.[1] The court dismisses this action with prejudice as to the HUD Defendants and without prejudice as to the DOJ Defendants by judgment filed today.

I

Because this case is the subject of two prior memorandum opinions and orders, *see MacKenzie v. Castro*, 2017 WL 1021299 (N.D. Tex. Mar. 16, 2017) (Fitzwater, J.) ("*MacKenzie II*"); *MacKenzie v. Castro*, 2016 WL 3906084 (N.D. Tex. July 19, 2016) (Fitzwater, J.) ("*MacKenzie I*"), the court will recount only the background facts and procedural history necessary to understand the present decision.

In 2010 an entity named 1600 Pacific Building, LP ("1600 Pacific") filed a housing discrimination complaint ("HUD Complaint") alleging that the City of Dallas (the "City") had thwarted 1600 Pacific's efforts to redevelop an office building into a large affordable housing project. 1600 Pacific complained that the City had violated the FHA, Title VI, the

---

[1]MacKenzie's September 5, 2017 motion to compel the HUD Defendants' discovery responses, which is pending before the magistrate judge, is also moot in light of today's decision.

Rehabilitation Act, and the HCRA.  In investigating the HUD Complaint, HUD opened four case files—one for each of the four statutes that 1600 Pacific claimed the City had violated. While the matter was pending before HUD, 1600 Pacific withdrew its FHA complaint and HUD closed the file.  After HUD completed its investigation, it issued a "Letter of Findings of Non-Compliance" ("Non-Compliance Letter"), concluding that the City was not in compliance with Title VI, the Rehabilitation Act, or HCRA.  Thereafter, HUD and the City engaged in conciliation and entered into a "Voluntary Compliance Agreement" ("VCA") that addressed the City's alleged violations of Title VI, the Rehabilitation Act, and HCRA. MacKenzie did not participate in the conciliation and was not a signatory to the VCA.  As for the City's alleged violation of the FHA, the VCA stated that 1600 Pacific had withdrawn its complaint and that HUD had closed its case.

MacKenzie later filed this lawsuit against the HUD Defendants,[2] alleging violations of various provisions of the FHA and of his constitutional due process rights.  The HUD Defendants moved to dismiss, and the magistrate judge to whom the motion was referred recommended dismissal.  This court, however, declined to adopt the magistrate judge's findings, conclusions, and recommendation, and instead permitted MacKenzie "one last, fair opportunity to plead his best case."  *MacKenzie II*, 2017 WL 1021299, at *1 n.1 (citing Dec.

---

[2]MacKenzie originally sued HUD, former HUD Secretary Julian Castro ("Secretary Castro"), and former HUD Secretary Shaun Donovan ("Secretary Donovan").  Secretaries Castro and Donovan have been replaced as defendants by operation of Rule 25(d).  *See MacKenzie II*, 2017 WL 1021299, at *2-3; *see also infra* note 3.

16, 2015 Order at 2). MacKenzie then filed his first amended complaint. The HUD Defendants moved to dismiss the first amended complaint under Rule 12(b)(1), but the court denied the motion. *MacKenzie I*, 2016 WL 3906084, at *4.

With leave of court, MacKenzie then filed a second amended complaint that added as parties the DOJ Defendants[3] and alleged that defendants violated the FHA, Title VI, § 504 of the Rehabilitation Act, and § 109 of HCRA[4] and deprived him of his constitutional right to due process. The HUD Defendants[5] moved to dismiss MacKenzie's second amended complaint under Rule 12(b)(6) on the ground that MacKenzie had failed to state a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. *MacKenzie II*, 2017 WL 1021299, at *2. The court treated the HUD Defendants' motion, in part, as if it had been filed under Rule 12(b)(1), and dismissed for lack of subject matter jurisdiction MacKenzie's claim based on HUD's closure of the FHA complaint investigation, *MacKenzie II*, 2017 WL 1021299, at *5-8, HUD's failure to make a reasonable cause determination

---

[3]MacKenzie originally sued DOJ, former U.S. Attorney General Loretta Lynch, and former U.S. Attorney General Eric H. Holder. In *MacKenzie II*, 2017 WL 1021299, at *2-3, the court raised *sua sponte* that the proper individual defendants in this case are Secretary Carson and General Sessions, in their official capacities, and that because Secretary Carson and General Sessions are being sued in their official capacities, the actions against them should be treated as actions against HUD and DOJ, respectively. *Id.* (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).

[4]MacKenzie also alleges violations of the implementing regulations for each enumerated statute.

[5]At the time the HUD Defendants moved to dismiss MacKenzie's second amended complaint, he had not yet served the DOJ Defendants. Accordingly, those defendants did not join in the HUD Defendants' motion.

under the FHA, *id.* at \*8-9, and the various other alleged violations of the FHA and regulations, *id.* at \*11. To the extent MacKenzie's claims were based on HUD's entering into the VCA, the court concluded that although it had subject matter jurisdiction to review HUD's conduct, MacKenzie had nonetheless failed to plead a claim on which relief could be granted, and thus these claims were subject to dismissal under Rule 12(b)(6). *Id.* at \*11-12. Because the HUD Defendants did not move to dismiss MacKenzie's due process claim, the court noted that the claim remained for adjudication. *Id.* at \*12.

After the court decided *MacKenzie II*, MacKenzie served the DOJ Defendants with process. The DOJ Defendants now move to dismiss MacKenzie's second amended complaint under Rules 12(b)(1) and 12(b)(6), and the HUD Defendants move under Rule 12(c) for judgment on the pleadings with respect to MacKenzie's due process claim (the only claim remaining against them). MacKenzie opposes both motions. He also moves for leave to file a third amended complaint and to transfer this case to the District of South Carolina.

## II

The court begins with MacKenzie's motion to transfer venue under 28 U.S.C. § 1404(a).

## A

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against

unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983)). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*" ); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*") ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Once the court resolves this issue, the court must in deciding whether to transfer the case evaluate "a number of private and public interest factors, none of which are given dispositive weight."[6] *Volkswagen I*, 371 F.3d at 203

---

[6] 

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

(citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). The party seeking transfer[7] must establish "good cause" for transferring the case, meaning that, "in order to support [a] claim for a transfer, [he] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315 (quoting § 1404(a)) (final brackets in original).

B

The court begins its analysis by considering whether the District of South Carolina is a district in which MacKenzie could have filed his claims. *Volkswagen I*, 371 F.3d at 203. It concludes that it is not.

Because defendants are government agencies and officers, venue in this case is governed by 28 U.S.C. § 1391(e)(1), which provides, in pertinent part:

> [a] civil action in which a defendant is an officer or employee of the United States . . . or an agency of the United States . . . may . . . be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

---

*Volkswagen I*, 371 F.3d at 203.

[7]Although defendants typically seek transfer under § 1404(a), "[t]he Supreme Court has clearly indicated that either a defendant or a plaintiff can move for change of venue under § 1404(a) and that the same treatment and consideration should be given to the motion for transfer regardless of who the movant of that motion may be." *Volkswagen I*, 371 F.3d at 204 (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990)).

28 U.S.C. § 1391(e)(1).  MacKenzie concedes that all of the defendants "reside" in Washington, D.C., and does not contend that any of the events giving rise to this lawsuit occurred in South Carolina.  Instead, he argues that under § 1391(e)(1)(C), venue is proper in the District of South Carolina because "he 'might' have brought the case in the U.S. District of South Carolina had he been a resident of South Carolina in March, 2015."  P. 7/6/17 Reply 3.

In addressing the "might have been brought" requirement of § 1404(a), however, the Supreme Court has clearly explained:

> [i]f *when a suit is commenced*, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district "where (the action) might have been brought."  If he does not have that right, independently of the wishes of defendant, it is not a district "where it might have been brought[.]"

*Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (emphasis added) (citation omitted); *see also, e.g., Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1246 (5th Cir. 1983) (noting, in dicta, "[f]ollowing the 'plain words' of [§ 1404(a)], the Supreme Court has prohibited transfers to alternative federal forums unless the suit 'might have been brought' there *at the time plaintiff filed his original suit*." (emphasis added) (quoting *Hoffman*, 363 U.S. at 342-43)); *Am. Home Mortg. Servicing, Inc. v. Triad Guar. Ins. Corp.*, 714 F.Supp.2d 648, 652-53 (N.D. Tex. 2010) (Lynn, J.) (holding that transfer under § 1404(a) was not appropriate because "*at the time this suit was filed*, [plaintiff] could not have counterclaimed against [defendant] in the Delaware court, because [plaintiff] was not [yet] a defendant in that case.").

At the time this lawsuit was filed, MacKenzie was a resident of Texas, not South

Carolina. Therefore, he had no right to file this lawsuit in the District of South Carolina. It is irrelevant that MacKenzie "might" have brought this lawsuit in the District of South Carolina had he been a resident of South Carolina in March, 2015. It is undisputed that he was not a South Carolina resident when he filed this lawsuit.

Accordingly, because MacKenzie was not a resident of the District of South Carolina at the time this suit was filed, and he has not provided any other reason why venue would have been proper in the District of South Carolina, the court holds that the District of South Carolina is not a "district or division where [this lawsuit] might have been brought." 28 U.S.C. § 1404(a). MacKenzie's motion under § 1404(a) to transfer this suit to the District of South Carolina is therefore denied.

III

The court now turns to the merits of the DOJ Defendants' motion to dismiss under Rule 12(b)(1) and (6) and the HUD Defendants' motion under Rule 12(c) for judgment on the pleadings. It starts by setting out the pertinent standards for deciding these motions.

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence,

the challenge to subject matter jurisdiction is facial. *Id*. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id*. (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

B

The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion under Rule 12(b)(6). *See, e.g., Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation and internal quotation marks omitted)). Under Rule 12(b)(6), the court evaluates the sufficiency of plaintiffs' second amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind*., 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (brackets and internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007)). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced

by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  To survive the HUD Defendants' motion, MacKenzie's second amended complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (brackets omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U. S. at 555).

The HUD Defendants move under Rule 12(c) for judgment on the pleadings as to MacKenzie's claim that the HUD Defendants violated his Fifth Amendment[8] due process rights.

A

The HUD Defendants move for judgment on the pleadings on MacKenzie's procedural due process claim on the following grounds: first, MacKenzie cannot identify any constitutionally protected interest that was implicated by HUD's challenged actions, and, second, MacKenzie fails to allege any facts showing that the procedures employed by HUD fell short of what was "due."

MacKenzie responds that he has no other adequate remedy in a court because he has no cause of action against the City for defendants' violations of his constitutional due process rights; that his due process claims are not limited to the allegations in ¶¶ 7, 8, and 9 of the second amended complaint, but are instead based on *all* of the allegations in the second amended complaint, and that he should be permitted under Rule 15(a) to amend his complaint to clarify the scope of his claim; that he "has a legitimate claim to 'Justice' and justice is a fundamental, natural right which is protected by the United States Constitution,"

---

[8]Although MacKenzie cites only the Fourteenth Amendment in the second amended complaint, the court will assume that he intends to plead a deprivation of his Fifth Amendment rights, which applies to federal actors. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) ("The Fifth Amendment applies . . . to violations of constitutional rights by the United States or a federal actor.")

P. 7/24/17 Br. 9; that defendants deprived him of his right to justice when HUD completely failed to take the legally-required action described in 42 U.S.C. § 3610(g)(1) and (2)(A); that the substance of the Non-Compliance Letter easily meets the FHA standard for a "charge"; that the existence of the Non-Compliance Letter, including the six discriminatory housing practices recited therein, precluded any possibility for HUD to dismiss the FHA complaint; that HUD's failure to take the action legally required in 42 U.S.C. § 3610(g)(2)(A) further deprived him of numerous substantial statutory rights granted by Congress in the FHA[9]; that HUD's investigation was obstructed and impeded by at least one known HUD official in violation of 18 U.S.C. § 1505,[10] that at least one DOJ official instructed at least one known HUD official to "stand down" from issuing a reasonable cause determination, that by complying with the DOJ "stand down" order (which indefinitely delayed the completion of HUD's investigation), HUD willingly cooperated in violating the law, implicating HUD as a conspirator to DOJ's obstruction of justice, and that the acts of the DOJ and HUD Defendants impeded and corrupted HUD's investigation, depriving him of justice and violating his due process rights; and that a known HUD official demanded and coerced 1600

---

[9]MacKenzie contends that he was deprived of the following: election of judicial determination (42 U.S.C. § 3612(a)); administrative law judge hearing in absence of election (42 U.S.C. § 3612(b)); expedited discovery and hearing (42 U.S.C. § 3612(d)), hearings, findings and conclusions, and order (42 U.S.C. § 3612(g)); and civil action for enforcement when election is made for such civil action (42 U.S.C. § 3612(o)).

[10]18 U.S.C. § 1505 is a criminal statute that makes it a crime, *inter alia*, to influence, obstruct, or impede "the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States."

Pacific to withdraw the FHA portion of the HUD Complaint, under threat of retaliatory actions, in violation of 18 U.S.C. § 1505, and that, in so doing, the HUD Defendants corrupted HUD's investigation, deprived MacKenzie of justice, and violated his "due process" rights.

B

In the second amended complaint, MacKenzie alleges that the HUD Defendants violated his due process rights by failing to follow certain *procedures* required by the FHA. *See* 2d Am. Compl. ¶¶ 7, 8, and 9. Accordingly, the court considers, first, whether MacKenzie has alleged a procedural due process violation. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In their motion to dismiss, the HUD Defendants contend, *inter alia*, that MacKenzie has failed to identify a constitutionally protected interest that was implicated by HUD's challenged actions.

The court will assume *arguendo* that MacKenzie has adequately pleaded that *all* of the HUD Defendants' actions described in the second amended complaint violated his due process rights. Although MacKenzie refers generally to his constitutionally protected right to "justice," P. 7/24/17 Br. 9, he appears to base his due process claim on HUD's allegedly depriving him of the following government "benefits": a reasonable cause determination, the issuance of a charge, and not dismissing 1600 Pacific's FHA complaint.

The Fifth Amendment guarantees that no person shall "be deprived of life, liberty, or

-14-

property, without due process of law." U.S. Const. amend V. "The process due varies by the strength of the interests involved, but only actions that infringe enumerated interests—life, liberty, and property—require due process." *Maurer v. Indep. Town*, 870 F.3d 380, 385 (5th Cir. 2017) (citing *Tex. Faculty Ass'n v. Univ. of Tex. at Dall.*, 946 F.2d 379, 383-84 (5th Cir. 1991)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property interests are created and defined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. *Id.*

MacKenzie has failed to plead a plausible procedural due process claim because he cannot show a "legitimate claim of entitlement" to a reasonable cause determination, the issuance of a charge, or a refusal to dismiss 1600 Pacific's FHA complaint. In his brief, MacKenzie argues that

> the existence of the [Non-Compliance Letter], including the six discriminatory housing practices recited therein, precluded any possibility for HUD to dismiss (42 U.S.C. § 3610(g)(3)) the February 4, 2010 [FHA] Complaint (a dismissal would have easily been challenged under the Administrative Procedures Act). This explains why HUD eventually, in late September, 2014, interfered with and coerced the complainant, 1600 Pacific Building, LP, to withdraw the Fair Housing Act portion of the February 4, 2010 [FHA] complaint.

P. 7/24/17 Br. 11. MacKenzie has failed, however, to point to any provision of the FHA that would preclude HUD from permitting the voluntary dismissal of 1600 Pacific's complaint.

He cites 42 U.S.C. § 3610(g)(3), but this section—relating to the reasonable cause determination—contains nothing that would suggest that MacKenzie was somehow entitled to have HUD refuse to permit 1600 Pacific to voluntarily dismiss its complaint[11] before HUD made a reasonable cause determination and issued a charge.[12]

To the extent MacKenzie bases his due process claim on HUD's failure to make a reasonable cause determination, 42 U.S.C. § 3610(g)(1) requires that such a determination be made within 100 days after the filing of the complaint, or, "[i]f the Secretary is unable to make the determination within 100 days after the filing of the complaint . . . , the Secretary shall notify the complainant and respondent in writing of the reasons for not doing so." Although it appears from the record that the Secretary did not make a reasonable cause

_____

[11]To the extent MacKenzie contends that HUD interfered with, and coerced, 1600 Pacific to withdraw the FHA portion of its complaint, the court has already concluded that MacKenzie's allegation that defendants "interfered with the [HUD Complaint] investigation by demanding/coercing the Complainant to withdraw the February 4, 2010 Complaint" is conclusory and insufficient to state a plausible claim that any defendant violated 42 U.S.C. § 3617 or any of the cited regulations. *MacKenzie II*, 2017 WL 1021299, at *8 n.9 (alterations in original).

[12] MacKenzie's attempt use the Non-Compliance Letter to argue that HUD *did*, in fact issue a charge (in substance, if not in name) is equally unavailing. The Non-Compliance Letter addresses *only* 1600 Pacific's claims brought under Title VI, the Rehabilitation Act, and the HCRA. *See MacKenzie II*, 2017 WL 1021299, at *9 ("[W]hile the Non-Compliance Letter clearly found that the City had engaged in discriminatory housing practices for purposes of 1600 Pacific's *other statutory claims*, it made *no* finding of discrimination with respect to 1600 Pacific's *FHA claim*."). It does not cite to the FHA, refer to the case file opened for 1600 Pacific's FHA claim, or make any findings with respect to the alleged FHA violations. Accordingly, the Non-Compliance Letter does not constitute a charge under § 3610(g) that would somehow preclude HUD from accepting 1600 Pacific's voluntary dismissal of its FHA claim.

-16-

determination within the § 3610(g)(1) timeframe—he did not make a reasonable cause determination at all with respect to 1600 Pacific's FHA complaint—the statute specifically contemplates that the Secretary can take longer than the prescribed period, provided he gives the complainant notice of his inability to make the determination within 100 days. As noted in *MacKenzie II*, MacKenzie does not plead that HUD improperly extended the period for issuing its reasonable cause determination without first providing notice to 1600 Pacific. *See MacKenzie II*, 2017 WL 1021299, at *9 n.12. And it is undisputed that 1600 Pacific voluntarily withdrew its FHA complaint, thus eliminating the need for the Secretary to make a reasonable cause determination. MacKenzie has not pleaded a plausible claim of entitlement to a reasonable cause determination under § 3610(g).

With respect to MacKenzie's contention that he was denied process as a result of HUD's failing to issue a charge with respect to 1600 Pacific's FHA complaint, the court has already held that

> MacKenzie is correct that had HUD determined, with respect to 1600 Pacific's *FHA complaint*, that reasonable cause existed to believe that a discriminatory housing practice had occurred, HUD would have been required under 42 U.S.C. § 3610(g)(2)(A) to immediately issue a charge on behalf of 1600 Pacific. But as MacKenzie recognizes, HUD made no such determination. In fact, in his response brief, he complains of HUD's failure to make a reasonable cause determination under the FHA. *See* P. Br. 9 ("In light of [the Non-Compliance Letter], which charged [the City] with numerous definitive, concrete violations of Title VI, [the Rehabilitation Act], and [HCRA] . . . all concerning [the City's] discriminatory housing practices, and given the [FHA]'s much lower threshold of 'reasonable cause determination[,'] it was obfuscation and unlawful for HUD *to fail to issue* a [reasonable cause

> determination]." (emphasis added)). But while the
> Non-Compliance Letter clearly found that the City had engaged
> in discriminatory housing practices for purposes of 1600
> Pacific's *other statutory claims*, it made *no* finding of
> discrimination with respect to 1600 Pacific's *FHA claim*.
> Moreover, HUD ultimately had no need to make such a
> determination because 1600 Pacific withdrew its FHA complaint
> and HUD closed the file.

*MacKenzie II*, 2017 WL 1021299, at * 9 (footnotes omitted). For the reasons explained in

*MacKenzie II*, the court concludes, based on the facts pleaded in this case, that MacKenzie

did not have a legitimate claim of entitlement to the issuance of a charge under § 3610(g).

Because MacKenzie has not pleaded that he was deprived of any government benefit

to which he had a legitimate claim of entitlement, the court grants the HUD Defendants'

motion for judgment on the pleadings on MacKenzie's procedural due process claim.

C

Although in the second amended complaint MacKenzie specifically alleges that the

HUD Defendants violated his due process rights by failing to follow certain *procedures*

required by the FHA, *see* 2d Am. Compl. ¶¶ 7, 8, and 9, he argues in his response brief that

defendants' conduct has deprived him of his fundamental right to justice, in violation of his

*substantive* due process rights. *See* P. 7/24/17 Br. 7. Accordingly, the court will assume

*arguendo* that MacKenzie also intends to pursue a substantive due process claim against the

HUD Defendants.

The Supreme Court has long recognized that the Due Process Clause is more than a

guarantee of procedural fairness and "cover[s] a substantive sphere as well, 'barring certain

government actions regardless of the fairness of the procedures used to implement them.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "The reach of substantive due process is limited, however, and it protects against only the most serious of governmental wrongs." *Moore v. Dall. Indep. Sch. Dist.*, 557 F.Supp.2d 755, 761 (N.D. Tex. 2008) (Fitzwater, C.J.) (citation omitted). The Supreme Court has emphasized that "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," courts should be "reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).

In his response brief, MacKenzie argues that the HUD Defendants deprived him of his right to "justice" by failing to make a reasonable cause determination, failing to issue a FHA charge, dismissing 1600 Pacific's FHA complaint, and obstructing justice. Assuming *arguendo* that this court would recognize the abstract concept of "justice" as a fundamental right protected by the substantive component of the Due Process Clause, MacKenzie has not plausibly pleaded that the actions of the HUD Defendants deprived him of that right. With respect to MacKenzie's claim that he was entitled to a reasonable cause determination, the issuance of a charge, and HUD's not dismissing 1600 Pacific's complaint, the court has already explained why MacKenzie was not entitled to any of these government "benefits" under the clear terms of the FHA. *See supra* § IV(B). To the extent MacKenzie contends that the HUD Defendants deprived him of his constitutional right to "justice" by encouraging the City to refuse to cooperate with official HUD attempts to conciliate the February 4, 2010

-19-

FHA complaint, MacKenzie's conclusory allegation that "HUD Defendants' CPD (Community Planning and Development) staff was encouraging Dallas to refuse to Conciliate" in violation of 42 U.S.C. § 3617 is insufficient to state a plausible claim that the HUD Defendants violated § 3617. 2d Am. Compl. ¶ 11. Accordingly, the court concludes at least for these reasons that MacKenzie has failed to plausibly plead a substantive due process claim.

The court therefore grants the HUD Defendants' motion for judgment on the pleadings to the extent MacKenzie intended to also bring a substantive due process claim against them.

D

For the reasons explained, MacKenzie's remaining claims against the HUD Defendants are dismissed with prejudice.

V

The court now turns to the DOJ Defendants' motions, beginning with their motion to dismiss under Rule 12(b)(1) on the ground that MacKenzie lacks standing.

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v*, 138 F.3d at 151. It is well settled that "the issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006). The doctrine of standing addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the

case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). The only issue in this case is constitutional standing, which requires that a litigant establish three elements: (1) injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *E.g., Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). To obtain injunctive relief, a plaintiff must be "likely to suffer future injury." *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]" *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). The threat of future injury to the plaintiff "must be both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 102 (quotation marks omitted).

B

The DOJ Defendants move to dismiss MacKenzie's claims on the ground that he cannot establish standing to obtain the purely equitable relief he seeks in this lawsuit. They maintain that, assuming that DOJ interfered with and obstructed HUD's investigation of the City in June 2011, as alleged in the second amended complaint, MacKenzie has not shown any continuing harm at the hands of DOJ or likelihood that he will be involved in some way

with a similar HUD investigation of the City in the future, and that this future investigation will again be interfered with and obstructed by DOJ.[13]

In his response, MacKenzie cites language in the APA that he contends permits the court to enter the injunctive relief he seeks.[14] But the fact that certain agency conduct is made reviewable under the APA, or that the APA specifically authorizes courts to enter injunctive relief, does not mean that a particular plaintiff seeking injunctive relief under the APA necessarily has standing. MacKenzie neither pleads nor argues in response to the DOJ Defendants' motion that he is likely to suffer future injury as a result of any action by the DOJ Defendants. In fact, the only allegation in the second amended complaint that even mentions the DOJ clearly describes past events:

> [i]n June, 2011, DOJ Defendants violated 42 USC § 3617, 24 CFR § 1.7(e), 24 CFR § 8.56(k), and 24 CFR § 6.11(f) by interfering with, and obstructing, HUD's investigation of the

---

[13]The HUD Defendants do not similarly argue that MacKenzie lacks standing to sue them. Nor does the court raise this issue on its own. Although the court is permitted to raise the issue of standing *sua sponte*, *see, e.g., Lucas v. BMS Enterprises, Inc.*, 2010 WL 2671305, at *1 n.2 (N.D. Tex. July 1, 2010) (Fitzwater, C.J.) (citing *Villas at Parkside Partners v. City of Farmers Branch*, 24 F.R.D. 551, 558 (N.D. Tex. 2007) (Lindsay, J.)), the court cannot conclude from the face of the second amended complaint—as it can with respect to the DOJ Defendants—that MacKenzie lacks standing to sue the HUD Defendants.

[14]MacKenzie also argues in his response that the DOJ Defendants were properly served in August 2016, that their motion is untimely, and that the court should therefore strike it from the record. The court disagrees that the DOJ Defendants' motion is untimely. In its April 14, 2017 order, the court explained that MacKenzie's earlier attempts to effect service on the DOJ Defendants did not comply with Rule 4, and ordered him to effect service in conformity with Rule 4(i) and 4(c)(2). Pursuant to the court's April 14, 2014 order, MacKenzie served the DOJ Defendants on April 18, 2017. Their motion to dismiss, filed June 19, 2017, is therefore timely under Rule 12(a)(2).

February 4, 2010 [FHA complaint]. HUD Defendants violated
42 USC § 3617, 24 CFR 1.7(e), 24 CFR 8.56(k), and 24 CFR
6.11(f) in June, 2011, by cooperating, colluding, and conspiring
with DOJ Defendants to obstruct the completion of the [FHA
complaint] investigation and to further delay the issuance of a
reasonable cause determination.

2d Am. Compl. ¶ 18.[15]  With respect to the DOJ Defendants, MacKenzie complains only

about their interference with, and obstruction of, HUD's investigation of the now-dismissed

FHA complaint.  MacKenzie does not plead that he intends to bring another FHA complaint,

or that, if he does (or if the dismissed FHA complaint filed by 1600 Pacific were somehow

revived, perhaps through this lawsuit), the DOJ Defendants are likely to interfere again with,

or obstruct, HUD's investigation.  In sum, MacKenzie has alleged only "past exposure to

illegal conduct," not a present case or controversy.  *O'Shea*, 414 U.S. at 495.

Moreover, the injunctive relief that MacKenzie seeks in this case relates only to the

HUD Defendants.  In his brief, MacKenzie explains:

If this Court concludes, as it should, that DOJ Defendants'
interference and obstruction of HUD's FHA investigation and
compliance review, combined with HUD's concomitant
cooperation and collusion with DOJ Defendants, corrupted the
Fair Housing Act investigation, as well as HUD's Title
VI/Section 504/Section 109 Compliance Review, it would "*hold
unlawful and set aside*" the November 22, 2013 Letter of
Findings (of non-compliance) and conclusion of HUD's

---

[15]In his response brief, MacKenzie requests leave to replead and presents an amended
¶ 18 that he would substitute in place of ¶ 18 of the second amended complaint. *See* P.
8/25/17 Br. 16.  For the reasons explained below, the court denies MacKenzie's request to
replead. *See infra* § VI.  But even if the court were to consider the proposed revised ¶ 18,
MacKenzie only adds details to his description of the DOJ Defendants' past conduct; he does
not plausibly plead a threat of future harm.

> Compliance Review (including the November 5, 2014 Voluntary Compliance Agreement) and it would also "*compel* [HUD] *agency action unlawfully withheld or unreasonably delayed*[.*"] Indisputably this favorable decision would clearly redress the HUD and DOJ injuries to Pro Se Plaintiff.

P. 8/25/17 Br. 13 (first alteration in original). MacKenzie is not asking the court to order any injunctive relief directed at the DOJ Defendants. In other words, even if he was successful in this lawsuit and obtained the relief he seeks (i.e., an order setting aside the Non-Compliance Letter and VCA), he would not be asking the court to enjoin the DOJ Defendants.

In sum, the second amended complaint alleges that, in June 2011, the DOJ Defendants engaged in an act of wrongful conduct. MacKenzie does not have standing to sue the DOJ Defendants for injunctive relief based on that past conduct. Accordingly, the court grants the DOJ Defendants' motion under Rule 12(b)(1) to dismiss MacKenzie's claims against them on the ground that MacKenzie lacks standing to sue the DOJ Defendants.[16]

## VI

In his response to the motions to dismiss filed by the HUD Defendants and the DOJ Defendants, MacKenzie requests leave to replead.[17]

The determination whether to grant leave to replead is a matter within this court's

---

[16]Because the court is granting the DOJ Defendants' motion to dismiss on the ground that MacKenzie lacks standing, it does not address their alternative motion to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

[17]He also separately moves for leave to amend, which the court addresses *infra* at § VII.

discretion.  *See, e.g., ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 362 (5th Cir.

2002).  The court has already afforded MacKenzie two opportunities to rectify the defects

in his complaints.  In its December 16, 2015 order, this court gave MacKenzie "one last, fair

opportunity to plead his best case."  *MacKenzie II*, 2017 WL 1021299, at *1 n.1 (citing Dec.

16, 2015 Order at 2).  After issuing its decision in *MacKenzie I*, the court granted

MacKenzie's unopposed motion to file a second amended complaint.  As it now stands,

MacKenzie has already had three fair opportunities to plead sufficient facts in support of his

claims.

     Moreover, as for the DOJ Defendants in particular, "[a]lthough leave to amend should

be 'freely give[n] . . . when justice so requires,' [Rule 15(a)(2)], a district court may refuse

leave to amend if the filing of the amended complaint would be futile, i.e., if the complaint

as amended would be subject to dismissal."  *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir.

2014) (some internal quotation marks omitted) (quoting *Ackerson v. Bean Dredging, LLC*,

589 F.3d 196, 208 (5th Cir. 2009)).  The court concludes that granting MacKenzie leave to

amend would be futile because there is no indication that he is relying on conduct of the DOJ

Defendants other than past conduct.

     Accordingly, the court in its discretion denies MacKenzie's request for leave to

replead yet again.  *See ABC Arbitrage*, 291 F.3d at 362 (concluding that district court did not

abuse its discretion by denying leave to replead where court had already given plaintiffs one

opportunity to do so).

# VII

MacKenzie moves for leave to file a third amended complaint so that he can "add the alleged violations of the statutory provisions found at 18 U.S.C. [§] 1505 . . . to paragraphs 11, 18, and 23 of the [second] Amended Complaint." P. 8/1/17 Br. 2. Defendants oppose the motion on the ground that, because there is no civil right of action that allows a private plaintiff like MacKenzie to enforce a criminal statute, the proposed amendment is futile.

## A

When, as here, the deadline for seeking leave to amend pleadings has expired,[18] a court considering a motion to amend must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard. *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). To meet the good cause standard, the moving party must show that, despite his diligence, he could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535. If the movant satisfies the requirements of Rule 16(b)(4), the court must then determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which

---

[18]Under the court's June 29, 2015 scheduling order ("Scheduling Order"), motions for leave to amend the pleadings were due October 1, 2015. In his motion to transfer, MacKenzie states that "[t]his Court's June 29, 2015 Scheduling Order (Doc. 26) is no longer in effect, and this Court has not issued a new Scheduling Order." P. 6/3/17 Br. 2. MacKenzie is incorrect. Although the deadlines in the court's Scheduling Order have all expired, the Scheduling Order is still in effect, and MacKenzie's August 1, 2017 motion for leave to amend, filed approximately one year and ten months after the deadline, is untimely.

provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at * 1.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (citation, internal quotation marks, and brackets omitted). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps., Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

B

Here, MacKenzie has not only failed to meet the good cause standard required under Rule 16(b)(4) to obtain modification of the scheduling order, he has not addressed the four-part test under which the court assesses whether to amend the scheduling order. His three-page motion for leave to amend refers to Rule 15(a)(2), but fails even to mention Rule 16(b)(4). "When a party . . . does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone." *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.) (citing *EEOC v. Serv. Temps*, 2009 WL 3294863, at *1).

Moreover, even if the court were make an exception, as it has in cases where the movant does not address the Rule 16(b)(4) good cause standard, but the grounds on which

he relies to establish good cause are relatively clear, *see, e.g., Nieves v. John Bean Techs. Corp.*, 2014 WL 2587577, at *2 (N.D. Tex. June 10, 2014) (Fitzwater, C.J.)*; Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.), it would conclude that MacKenzie has not satisfied the Rule 16(b)(4) good cause standard. MacKenzie does not provide any explanation for why he waited approximately one year and ten months after the scheduling order deadline to move for leave to amend; he does not explain why the amendment is important; and the court cannot conclude that defendants—all of whom have, at this point, successfully moved to dismiss MacKenzie's claims asserted against them—will not be prejudiced by the amendment. Moreover, as discussed above, *see supra* § VI, MacKenzie has already been afforded three opportunities to plead plausible claims. In fact, in the court's December 16, 2015 order, the court stated that it was giving MacKenzie "one last, fair opportunity to plead his best case." *MacKenzie II*, 2017 WL 1021299, at *1 n.1 (citing Dec. 16, 2015 Order at 2). MacKenzie has not provided the court with a persuasive reason why he could not have added his allegations relating to the alleged violation of 18 U.S.C. § 1505 during either of the two previous opportunities he was given to amend his complaint. The court concludes that MacKenzie has not satisfied the requirements under Rule 16(b)(4) for modifying the Scheduling Order to permit him to file his motion for leave to amend. Accordingly, his motion for leave to amend the complaint is denied.

# VIII

In light of these rulings, the court denies as moot MacKenzie's objections to the magistrate judge's May 19, 2017 order and his motion to strike the HUD Defendants' response to his objections.[19]

\* \* \*

Accordingly, for the reasons explained, the court denies MacKenzie's motion to transfer; grants the HUD Defendants' Rule 12(c) motion for judgment on the pleadings; grants the DOJ Defendants' Rule 12(b)(1) motion to dismiss; denies MacKenzie's motion for leave to file amended complaint; and denies as moot MacKenzie's objections to the magistrate judge's May 19, 2017 order and his motion to strike the HUD Defendants' response to his objections. This case is dismissed with prejudice as to the HUD Defendants and without prejudice as to the DOJ Defendants by judgment filed today.

**SO ORDERED**.

November 22, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[19]MacKenzie's September 5, 2017 motion to compel HUD Defendants' discovery responses is also moot.